IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 23 CR 546 |
| | ) | |
| v. | ) | |
| | ) | |
| PRESTON POWELL, also known as "Marley," | ) | Chicago, Illinois |
| | ) | May 20, 2026 |
| Defendant. | ) | 12:37 p.m. |

TRANSCRIPT OF PROCEEDINGS - CHANGE OF PLEA
BEFORE THE HONORABLE THOMAS M. DURKIN

APPEARANCES:

For the Government: HONORABLE ANDREW S. BOUTROS
UNITED STATES ATTORNEY
BY: MR. JARED C. JODREY
MR. RICHARD M. ROTHBLATT
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

For the Defendant: BLAINE & VANZANT, LLP
BY: MS. HOLLY N. BLAINE
922 Davis Street
Evanston, Illinois 60201

LAW OFFICE OF MOLLY ARMOUR
BY: MS. MOLLY ARMOUR
53 W. Jackson Boulevard, Suite 1424
Chicago, Illinois 60604

Court Reporter: ELIA E. CARRIÓN, RPR, CRR, CRC
Official Court Reporter
United States District Court
219 S. Dearborn Street, Room 1432
Chicago, Illinois 60604
312.408.7782
Elia_Carrion@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court; defendant present:)

THE CLERK: Calling Case 23 CR 546, Defendant No. 2, the United States of America v. Preston Powell.

Counsel for the government, please identify themselves for the record.

MR. JODREY: Good afternoon. Good afternoon. Jared Jodrey and Richard Rothblatt on behalf -- on behalf of the United States.

THE CLERK: And on behalf of the defendant.

MS. BLAINE: Good afternoon. Holly Blaine and Molly Armour on behalf of Mr. Powell, who is present in custody.

THE COURT: All right. We're here for a change of plea.

There was a superseding information filed. Is -- is that correct?

MR. JODREY: That's correct, Your Honor.

THE COURT: What is the effect of the superseding information compared to the original indictment?

MR. JODREY: There's a different charge in the superseding information. The defendant's charged with using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, namely, the murder of Victim A. As consideration for the receipt of and as consideration for the promise and agreement to pay a thing of

pecuniary value and the death of Victim A did result in violation of Title 18 of United States Code Section 924(j)(1); whereas, the indictment was a murder-for-hire -- conspiracy to commit a murder-for-hire.

THE COURT: And the practical effect of it by way of mandatory sentencing versus discretionary, why don't you describe that.

MR. JODREY: In the initial indictment, if the defendant were convicted, it -- the mandatory penalty would have been a mandatory life sentence. It was death penalty-eligible. We decided not to seek the death penalty, but if convicted at trial on the indictment, it would be a mandatory sentence of life imprisonment. Here, there is not a mandatory minimum with the 924(j) charge. The maximum penalty is still life imprisonment.

THE COURT: Okay. There's no mandatory minimum on this? I thought there might be a ten-year.

MR. JODREY: No. But we do have a (c)(1)(C) agreement to a range.

THE COURT: Okay. And we'll talk about that in a moment.

All right. The first step is to see if the defendant is willing to waive indictment.

So please swear in the defendant.

(Defendant sworn.)

THE DEFENDANT: Yes.

THE COURT: Okay. And pull a microphone close to him, so -- very good.

All right. Sir, do you understand you're now under oath and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or making a false statement?

THE DEFENDANT: Yes.

THE COURT: All right. There are two steps we're going to engage in. First is whether you've seen a copy of the criminal information, which supersedes the indictment that's against you, and whether you've had a chance to look that over and whether you waive your right to indictment.

I'm going to ask you questions about your competence to do that that will apply also to your plea of guilty if I find that you're competent to plead -- to waive indictment. So at -- I'm going to ask you a variety of questions to make sure you're competent to both waive indictment and plead guilty to the criminal information, whether you've had the assistance of counsel, whether you understand your trial rights, whether you understand the nature and charge -- of the charges against you, that your plea is voluntary, and there's a factual basis for your plea.

You've been placed under oath and I'm going to ask you some questions and I'll give you advice about your rights. At

any time during these proceedings, you can consult with your lawyers. If you don't understand a question or a statement, get my attention, I'll interrupt the proceedings and allow you to talk to your lawyers.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Tell me your name.

THE DEFENDANT: Preston Powell.

THE COURT: How old are you?

THE DEFENDANT: 26.

THE COURT: And what town did you live in before you were arrested?

THE DEFENDANT: I was -- I was in Chicago.

THE COURT: All right. What's the highest level you achieved in school?

(Counsel and defendant conferring.)

THE DEFENDANT: I believe my junior year.

THE COURT: Okay. Junior year of high school?

THE DEFENDANT: Yes.

THE COURT: All right. What kind of work did you do before you were arrested, if you were employed?

THE DEFENDANT: No, I wasn't.

THE COURT: All right. Are you in -- well, are you in good physical health?

THE DEFENDANT: Yes.

THE COURT: And have you taken any drugs or alcoholic beverages within the last 24 hours?

THE DEFENDANT: No.

THE COURT: Have you ever been under the care of a doctor for a mental condition?

THE DEFENDANT: No.

THE COURT: All right. Does the government have any doubt as to defendant's competence to waive indictment and to plead guilty at this time?

MR. JODREY: No.

THE COURT: Does defense have any doubt as to defendant's competence to waive indictment and plead guilty at this time?

MS. BLAINE: No.

THE COURT: All right. I find the defendant is competent to both waive indictment and offer a plea of guilty.

Tell me the names of the attorneys representing you in this case.

THE DEFENDANT: Holly and Molly.

THE COURT: All right. Holly Blaine and Molly Armour?

THE DEFENDANT: Yes.

THE COURT: All right. Have you received a copy of the original indictment in this case, the -- and then the superseding information in this case?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time to talk to your attorneys and discuss this case?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with the representation of Ms. Blaine and Ms. Armour?

THE DEFENDANT: Yes.

THE COURT: Have they done everything you wanted them to do?

THE DEFENDANT: Yes, sir.

THE COURT: Have they done anything you didn't want them to do?

THE DEFENDANT: Nah.

THE COURT: All right. Now, there is a written waiver of indictment signed by you and your two attorneys, and it says that I understand I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me. After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

What that means in short is these prosecutors that they wanted to file a new charge against you, a different charge, they could be required if you insisted they'd go to the grand jury and do that. Grand jury is a group of individuals that hear evidence -- you're not present for it -- they hear

evidence and they decide whether there's probable cause to believe a crime was committed and probable cause that you committed it. And that's what a grand jury decides by a majority vote. There's 23 of them that sit and 12 of them have to agree that you -- there's probable cause to believe you committed a crime.

You're waiving that right and allowing them to go forward by way of what's called a criminal information. A criminal information is simply a -- similar to an indictment, except it's brought without going to the grand jury by consent with you to have the U.S. attorneys sign that charge and it has the same effect as an indictment.

In this case, the indictment is different -- the information, rather, is different than the indictment because no longer -- you're no longer facing a mandatory life imprisonment with this criminal information.

So that's a lot to digest. Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: Did you talk about all that with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Okay. And are you waiving your right to proceed -- to require the government to go to the grand jury to obtain this new criminal information?

THE DEFENDANT: Yes.

THE COURT: All right. Any additional questions I should ask on this score?

MR. JODREY: None from the government.

THE COURT: From defense?

MS. BLAINE: Nothing further.

THE COURT: All right. I'm going to ask you to -- I'm going to have my courtroom deputy hand this to your attorney and then ask the attorney to show it to you and I'm going to ask you if that's your signature on the document and did you read it before you signed it?

THE DEFENDANT: Yes.

THE COURT: Okay. And you can read and understand English, correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Okay.

All right. I'm going to sign this waiver form, and it will be filed.

Okay. I'll give these to my courtroom deputy right now.

(Pause.)

THE COURT: All right. Let's go back to the colloquy.

Now, I know you've decided not to have a trial and to plead guilty, but I want to explain to you your trial rights you're giving up by pleading guilty. Under the Constitution

and laws of the United States, you're entitled to a trial by jury on the charges against you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You have a right to plead not guilty and persist on a not guilty plea.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead not guilty and you have a trial, you'd have a right to a public and speedy trial, you'd have a right to be in the courtroom at all phases of the trial, and to present and object to evidence.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You'd have a right to be represented by counsel of choice at trial or to be appointed counsel if you can't afford one, and your counsel would have a right to make arguments on your behalf, present evidence, object to evidence, and cross-examine witnesses.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You also have a right to see and hear all the witnesses called to testify against you and use the subpoena power of the court to obtain the attendance of witnesses. A subpoena is simply a document which requires any

person to come to court that you and your attorneys want to come to court to testify in your defense.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial, you wouldn't have to prove you're innocent, and indeed you would be presumed to be innocent. The government would be required to prove you guilty by competent evidence beyond a reasonable doubt.

Do you understand these rights?

THE DEFENDANT: Yes, sir.

THE COURT: At trial, you'd have a right to testify if you chose to do so. You'd also have a right not to testify. No inference or suggestion of guilt could be drawn from the fact you didn't testify.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If the trial's a jury trial, the jury would be composed of 12 laypersons selected at random. You and your attorneys would have an opportunity to exclude jurors for cause if bias or disqualification is shown and also to exclude a specific number of jurors without cause.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: A jury would have to agree unanimously before you could be found guilty.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You should also be advised that a trial can either be a jury trial or a trial by a judge without a jury, which is called a bench trial. I'd be the judge in a bench trial. You can have a bench trial if you, the government, and I all agree to that procedure.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Whether it's a bench trial or a jury trial, we'd all be guided by the same rule, which requires that guilt be determined beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If at trial you're found guilty, you'd have a right to appeal. You'd also have a right to counsel on appeal. Some possible bases for an appeal of a trial verdict include insufficient evidence, pretrial or trial errors by the judge, and violations of your rights by the prosecution during pretrial or trial stages.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have you discussed your trial rights with your attorneys?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty and I accept your plea, which may not happen today, but at the point where I accept your plea, there won't be a trial. I'll enter a finding of guilty at the time I accept the plea and sentence you in the future on the basis of your plea after I consider all factors in your case, including a presentence investigation report.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: There is a written plea agreement. Is that correct?

THE DEFENDANT: Yes.

THE COURT: Defense agrees?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I'm asking this just of counsel right now. Are there any other agreements or promises that have been made that are not in writing that are not contained in the four corners of the plea agreement?

MR. JODREY: No.

MS. BLAINE: No.

THE COURT: All right. Now, the -- do we have a signed plea agreement?

MR. JODREY: I gave you guys the copy.

THE COURT: Let me make sure I have it. Here it is. Hand this to the courtroom -- to the defense counsel.

All right. Your lawyer is showing you a copy of a

plea agreement that has signatures on it, including your signatures. First, is this your signature?

THE DEFENDANT: Yes.

THE COURT: Did you read this document before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you discuss this plea agreement with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Did anyone pressure you to sign this plea agreement?

THE DEFENDANT: No.

THE COURT: Did you sign this plea agreement voluntarily?

THE DEFENDANT: Yes.

THE COURT: Under the plea agreement, you're pleading guilty to the one-count criminal information. Is that correct?

THE DEFENDANT: Yes.

THE COURT: And you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay.

Thank you.

I'm now going to explain to you what the consequences are when you plead guilty. If you -- if I accept your plea of guilty, you'll be judged guilty of a felony, and that

adjudication of guilt may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess firearms.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Are you a United States citizen?

THE DEFENDANT: Yes, sir.

THE COURT: Were you born in the United States?

THE DEFENDANT: Yes, sir.

THE COURT: All right. This criminal information and the plea agreement are matters of public record and may be disclosed to any party.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Will the government's attorney please state what the maximum penalties are in this case for the criminal information.

MR. JODREY: Yes. The charge in the superseding information carries a maximum sentence of life imprisonment, a maximum fine of $250,000, a supervised release term of up to five years, and there is also a $100 special assessment.

THE COURT: All right. Sir, do you understand what the maximum penalties are?

THE DEFENDANT: Yes.

THE COURT: And there's a mention of supervised

release. That's something that follows incarceration -- imprisonment, and if you violate conditions of supervised release, you can go back to jail.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: What's the government's preliminary calculation of the offense level, the criminal history category, and the resulting guideline range?

MR. JODREY: The base offense level is 43. There is a three-point reduction for acceptance of responsibility, so a total offense level of 40. His criminal history category is I, which would result in an anticipated advisory sentencing guideline range of 292 to 365 months' imprisonment.

THE COURT: Okay. Does defense agree with these preliminary calculations?

MS. BLAINE: Yes.

THE COURT: All right. Sir, have you and your attorneys talked about how the -- how the Sentencing Commission Guidelines might apply to your case?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And I'm not going to be able to determine the guideline range for your case until after the presentence report has been completed and you and the government have had an opportunity to challenge the facts and calculations reported by the probation officer.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you also understand that after your initial advisory range has been determined -- and we'll talk in a moment about the special aspects of this plea -- but the guideline calculations themselves, I may -- I have the authority to vary or -- upward or downward from that range, because I'm obligated to consider factors under 18 U.S.C. § 3553(a), including the sentencing guidelines, to determine your sentence, subject to the other agreement contained in this plea agreement.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Sir, you also understand parole has been abolished and whatever sentence I give you, you won't be released on parole. You'll get credit for good behavior in jail, but there is no parole in the federal system. There hasn't been for a long time.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. And if the sentence -- well, let's go now to the 11(c)(1)(C) aspect of this.

Why don't you describe it, Mr. Jodrey.

MR. JODREY: As set forth in the parties' written plea agreement, pursuant to Federal Rule of Criminal

Procedure 11(c)(1)(C), the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment of between 30 and 35 years, and each party is free to recommend whatever sentence it deems appropriate, but within that range of 30 to 35 years.

THE COURT: All right. Sir, what that means is if I accept the plea agreement, which is something I won't do today, I'll do that if -- if I accept it, it'll be after I've reviewed the presentence report. And if that takes place and I agree to accept it, it'll take place on the day of sentencing. The sentence has to be between 30 to 35 years in jail. If -- if you have no -- I have no discretion under this plea agreement to give you anything more than 35 years or anything less than 30 years. I can give you a sentence in between if I think it's appropriate. And if I accept the plea agreement, your sentence will be between 30 and 35 years in jail.

If I reject the plea agreement or if I feel that I -- I don't want to accept that range, because it's within my discretion to accept it, then you'll have a withdraw -- a right to withdraw any guilty plea you've made. Practically speaking, I won't accept the guilty plea until the time of the sentencing.

I think I did that with the codefendant too. Is that correct?

MR. JODREY: That's correct.

THE COURT: All right. So it won't be a matter of withdrawing the plea. I just -- you won't have -- I won't accept the plea, but the same practical effect. If -- if I reject it and believe that 30 to 35 years is a range I won't accept, then you'll have a right to go to trial or to otherwise proceed in -- further on the case in some other aspect, but I can't comment on what would happen after that.

So with all that, do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Anything else I should advise the defendant of relating to that?

MR. JODREY: To the sentence, no.

THE COURT: Okay.

MS. BLAINE: No.

THE COURT: Okay. Is there a waiver of appeal in this plea agreement?

MR. JODREY: There is. There's a waiver of appellate and collateral rights as set forth on page 13 of the written plea agreement.

THE COURT: All right. Sir, what that means is you have no right to appeal any errors made today or any errors made at your sentencing if I accept the plea agreement -- if I accept the plea. You always have a right to appeal if you believe you received ineffective assistance of counsel or you were incompetent to plead guilty. But beyond the -- those

limited grounds, there really is very few grounds you have to appeal.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Any further comment on the appellate waiver?

MR. JODREY: No. No.

MS. BLAINE: No, Your Honor.

THE COURT: Okay. Now, sir, I have to --

MS. ARMOUR: If -- Your Honor --

THE COURT: Yeah.

MS. ARMOUR: -- just if I may, Mr. Powell is -- per the written agreement is also preserving the retroactive application.

THE COURT: Thank you.

Yeah, if there's a retroactive application of the guidelines -- guidelines or any other law. Is that correct?

MS. ARMOUR: That's correct, any law promulgated by Congress, a United States Supreme Court decision, United States Sentencing Commission made express -- expressly retroactive, Mr. Powell have the benefit of such.

THE COURT: The benefit to at least seek some type of relief from it, not necessarily getting it, but at least to seek it.

MS. ARMOUR: Correct.

THE COURT: Okay. Do you understand that, sir?
THE DEFENDANT: Yes, sir.
THE COURT: All right.
The government agrees with that?
MR. JODREY: That's correct.
THE COURT: Okay. Thank you.
All right. Sir, has anyone forced you in any way to plead guilty?
THE DEFENDANT: No.
THE COURT: Has anyone threatened you in any way to cause you to pled guilty?
THE DEFENDANT: No.
THE COURT: Now, you acknowledge you signed this plea agreement, correct?
THE DEFENDANT: Yes.
THE COURT: Other than the plea agreement, any other promises or agreements that are not contained in this document?
THE DEFENDANT: No, sir.
THE COURT: Okay. Is your decision to plead guilty entirely voluntary?
(Counsel and defendant conferring.)
THE DEFENDANT: Yes, sir.
THE COURT: Have any promises been made to you about what your sentence will be, other than if I accept the plea agreement it's going to be between 30 and 35 years? Any other

promises?

THE DEFENDANT: No.

THE COURT: Okay. And the final decision as to what your sentence rests -- will be rests with me. I may sentence you to a period within that range. And if I decide I'm not going to give you a sentence within that range, you have a right to -- there'll be no guilty plea and we'll go back to where we were before this plea agreement was entered into.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Now, I have to be convinced you're guilty beyond a reasonable doubt before I'll accept your plea of guilty, so listen carefully to what the government attorney says the evidence will show. I'm then going to ask you to tell me what you did. And you can do that after the government has stated what the evidence will show. I'm going to ask you if you agree with what they say. And then, finally, I'm going to ask you in your own words to tell me what you did. It doesn't have to be lengthy. And I'll give you a chance to talk to your lawyers about that before you say anything. So listen first to what the government says the evidence would be if this case went to trial on the superseding criminal information.

MR. JODREY: If this case went to trial, the government's evidence would show that at the time of Victim A's death, there was a cash bounty for Victim A's murder.

Defendant participated in a conspiracy with Individual B to murder Victim A and collect the payment.

On or about January 27, 2022, defendant and Individual B drove in a Black 2014 Chrysler 300 sedan to the Youth Peace Center of Roseland located at 420 West 111th Street in Chicago.

Defendant and Individual B were there to shoot and kill Victim A. Defendant was armed with a loaded firearm, and Individual B was armed with a loaded Ruger AR-556.

Defendant and Individual B arrived at the Youth Peace Center in the Chrysler at approximately 2:22 p.m. They waited in the Youth Peace Center parking lot. At approximately 2:59 p.m., Victim A exited the Youth Peace Center. As Victim A walked across the parking lot to his car, defendant and Individual B got out of the Chrysler and shot at Victim A.

Victim A fled eastbound away from the shooters. Individual B pursued Victim A on foot and continued shooting at him. Victim A died as a result of the shooting. As Individual B chased down and killed Victim A, defendant shot the Youth Peace Center's security guard, who survived the shooting. After shooting the security guard, defendant fled from the scene on foot.

Following the murder of Victim A, defendant and Individual B sought to collect money that had been offered as consideration for Victim A's murder. As part of that effort,

defendant exchanged text communications with Individual B to collect his share of that money.

THE COURT: All right. Sir, have you heard the statement of the government?

THE DEFENDANT: Yes.

THE COURT: Is the statement correct?

THE DEFENDANT: Yes.

THE COURT: Do you disagree with any part of it?

THE DEFENDANT: No.

THE COURT: Do you wish to add to any part of it?

THE DEFENDANT: No.

THE COURT: All right. As I said earlier, when someone pleads guilty in front of me, I ask them to tell me in their own words what they did. It's not meant to be a statement in mitigation. That can come at a sentencing, but I do need to hear from you that you're pleading guilty because you are guilty.

So tell me -- do you need a moment to talk to your attorneys or are you prepared to make a statement?

THE DEFENDANT: I'm prepared.

THE COURT: Pardon me?

THE DEFENDANT: I'm prepared.

THE COURT: Go ahead.

THE DEFENDANT: I was involved in a conspiracy to commit murder with -- with -- with my colleague, we could --

we -- we decided to -- to kill somebody for a cash payment.

THE COURT: All right. And you were present for that, and you -- and the codefendant killed the victim and then you shot the security guard?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Does either the government or defense know of any reason why the defendant should not plead guilty?

MR. JODREY: No.

MS. BLAINE: No.

THE COURT: Sir, do you have any questions of me before I decide whether to accept your plea of guilty?

THE DEFENDANT: No, sir.

THE COURT: All right. I have a couple of questions.

I had asked earlier, through my courtroom deputy, to tell me the age of the defendant should he serve 85 percent of his sentence at 30 years and 85 percent of his sentence at 35 years.

Were you able to calculate that?

MS. BLAINE: I was, Your Honor.

THE COURT: Can you tell me that?

MS. BLAINE: If Mr. Powell is sentenced to a 30-year sentence, he should be approximately 49 years old at the time of his release, when considering good time credit and the time that he has already been in custody.

If Mr. Powell is sentenced to 35 years, he will be approximately 53 years old when he is released from custody.

THE COURT: All right. And the codefendant, Mr. Montgomery-Wilson, received -- has a similar 11(c)(1)(C) plea agreement, but with a different range, correct?

MR. JODREY: That's correct. His range is 35 to 45 years.

THE COURT: Okay. And what's the -- I -- I can posit why it's higher, but why don't you tell me why.

MR. JODREY: His codefendant was the one who tracked down and executed the victim.

THE COURT: Okay. All right.

All right, sir, then what is your plea to this criminal information? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right. Since you acknowledge you're in fact guilty as charged in the criminal information, you've had the assistance of counsel, you know of your right to a trial, and what the maximum possible punishment is, you're freely and voluntarily pleading guilty, I'll reserve making a decision whether or not to accept the plea until the time of sentencing.

I'll order that a presentence investigation report be prepared. I'll order the recommendation of the probation office be provided to both sides. You'll be asked to give

information -- give information for that report and your attorneys may be present if you wish. You must be truthful and cooperate completely with the probation office in connection with the presentence investigation.

Do we have a -- now, there's a sentencing date of October 5th set for Mr. Montgomery Wilson, correct?

MR. JODREY: I believe that's correct, yes.

THE COURT: All right. Do you have a preference or a reason to -- for one to be sentenced before the other? I'm not going to do them on the same day.

MR. JODREY: Not as far as the government's concerned. I -- I believe that defense counsel has some potential scheduling concerns.

THE COURT: Go ahead.

MS. ARMOUR: I was hoping that we could find a time in November for sentencing. I have some as of yet unresolved international travel that --

THE COURT: That's fine.

MS. ARMOUR: -- will be in October.

THE COURT: All right. With October 5th being the codefendant sentencing date, Emily, let's pick a date in November.

THE CLERK: Are the parties available on November 17th, it's a Tuesday, at 10:00 a.m.?

MR. JODREY: That works for the government.

MS. BLAINE: That works for the defense as well.

THE COURT: Okay. With a sentencing date of November 17th, what are the other dates, then, for...

THE CLERK: The presentence investigation report will be due on October 13th of 2026, any objections to the presentence investigation report and sentencing memorandum will be due on November 3, 2026, and any responses will be due on November 10th.

THE COURT: Okay. Anything else we need to address today? First, from the government?

MR. JODREY: Just we need to strike the trial date. I believe it's still in effect for August.

THE COURT: The trial date will be stricken.

MR. JODREY: That's all.

THE COURT: Anything else from defense?

MS. BLAINE: Nothing else. Thank you.

THE COURT: All right. Thank you all.

MR. JODREY: Thank you.

(Concluded at 1:04 p.m.)

* * * * *

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*/s/ Elia E. Carrión* *28th of June, 2026*

Elia E. Carrión, RPR, CRR, CRC
Official Court Reporter